# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

LYNN R. LEWIS SMITH,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C14-4076-LTS

**MEMORANDUM
OPINION AND ORDER**

---

    Plaintiff Lynn R. Lewis-Smith[1] seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her applications for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act).  Lewis-Smith contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant time period.  For the reasons that follow, the Commissioner's decision will be affirmed.

## I.  BACKGROUND

    Lewis-Smith was born in 1967 and has a high school education.  AR 229, 259. She has past relevant work as a child care attendant and office clerk.  AR 259.  Lewis-Smith applied for both DIB and SSI on August 9, 2011, alleging disability since June 21, 2010.  AR 229-31.  She alleged disability due to bilateral carpal tunnel syndrome, obesity,

---

[1] Plaintiff's surnames were not hyphenated in her complaint.  *See* Doc. No. 1 at 1 (identifying the plaintiff as "Lynn R. Lewis Smith").  However, her attorney hyphenated her surnames throughout both briefs (Doc. Nos. 11, 13).  I will assume that plaintiff's most-recent filings accurately reflect the manner in which she prefers to have her surnames presented.

history of right knee replacement, major depressive disorder and generalized anxiety disorder. AR 19-20.

Lewis-Smith's applications were denied initially and on reconsideration. AR 101, 133. She then requested a hearing before an Administrative Law Judge (ALJ). AR 177. ALJ Christel Ambuehl conducted a hearing on November 5, 2012, during which Lewis-Smith, a medical expert and a vocational expert (VE) testified. AR 41-87. On January 31, 2013, the ALJ issued a decision in which she found that Lewis-Smith was not disabled. AR 14-33. The Appeals Council denied Lewis-Smith's request for review on July 7, 2014. AR 1. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. §§ 404.981, 416.1481.

Lewis-Smith filed a complaint (Doc. No. 1) in this Court on September 10, 2014, seeking review of the Commissioner's decision. The parties have briefed the issues and the matter is now fully submitted.[2]

## II.   DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), *accord* 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when, due to his physical or mental impairments, the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§

---

[2] This case was initially assigned to Senior United States District Judge Donald E. O'Brien. The case was reassigned to United States District Judge Mark W. Bennett after Judge O'Brien passed away. Upon my appointment as a United States District Judge, the case was reassigned to me.

423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. §§ 404.1572(a), 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§

404.1521(b)(1)(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing the evidence the Commissioner will use to determine claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20

C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* §§ 404.145(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

## III.    THE ALJ'S FINDINGS

The ALJ made the following findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

(2)    The claimant has not engaged in substantial gainful activity since June 21, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: bilateral carpal tunnel syndrome (status post bilateral carpal tunnel release); obesity; history of right knee replacement; major depressive disorder; and generalized anxiety disorder (20 C.F.R. 404.1520(c) and 416.920(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations:  the claimant can occasionally lift/carry up to 20 pounds; frequently lift/carry up to 10 pounds; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; frequently (but not constantly) hand, finger and feel; occasionally climb stairs or ramps; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel or crouch; never crawl; and must avoid all exposure to unprotected heights. Mentally, the claimant is able to understand, remember, and carry out simple tasks; and she can tolerate occasional interaction with supervisors, coworkers and the public.

(6)      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)      The claimant was born on February 13, 1967 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

(8)      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9)      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from February 2, 2011, through the date of this decision (20 CFR 404-1520(g) and 416.920(g)).

AR 19-32.


## IV.    *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit

explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely

because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

As set forth above, the ALJ made a determination at Step Five that Lewis-Smith is not disabled because she can perform certain jobs that exist in significant numbers in the national economy. AR 32. Lewis-Smith contends that this decision is not supported by substantial evidence in the record because (1) the Appeals Council failed to consider new evidence that undermined the ALJ's credibility determination and (2) the ALJ's RFC determination was not based on opinions from a treating or examining source.

### A. New Evidence and the Credibility Determination

#### 1. Applicable Standards

##### a. Credibility

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.*

To determine a claimant's credibility, the ALJ must consider:

    (1)    the claimant's daily activities;

    (2)    the duration, intensity, and frequency of pain;

    (3)    the precipitating and aggravating factors;

(4)    the dosage, effectiveness, and side effects of medication; and

(5)    any functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "Other relevant factors include the claimant's relevant work history, and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). An ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence, *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010); rather such evidence is one factor that the ALJ may consider. *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008). The ALJ need not explicitly discuss each factor, as long as the ALJ acknowledges and considers the factors before discounting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. If an ALJ discounts a claimant's subjective complaints, he or she is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford*, 518 F.3d at 982 (quoting *Lewis*, 353 F.3d at 647).

### b.    *New Evidence*

The Commissioner's regulations state as follows:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. §§ 404.970(b), 416.1570(b). Evidence is new if it is "more than merely cumulative of other evidence in the record." *Bergmann v. Apfel*, 207 F.3d 1065, 1069

(8th Cir. 2000).  It is material if it is "relevant to claimant's condition for the time period for which benefits were denied."  *Id.*  "The Appeals Council 'shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision.'"  *Perks v. Astrue,* 687 F.3d 1086, 1093 (8th Cir. 2012) (quoting 20 C.F.R. § 404.970(b)).  If the Appeals Council considers the new evidence, but declines to review the case, the court reviews the ALJ's decision to determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision.  *Browning*, 958 F.2d at 823 n.4.

### 2.      Analysis

Lewis-Smith argues that the Appeals Council erred by failing to consider new medical evidence concerning a potential diagnosis of multiple sclerosis (MS) and thus did not appropriately evaluate the ALJ's decision to discount her credibility.

### a.      The ALJ's Reasoning

The ALJ set forth two primary reasons for discounting Lewis-Smith's claims of disabling pain and extensive limitations.  First, the ALJ noted that Lewis-Smith did not seek treatment as often as one would expect for someone with allegedly-disabling conditions.  AR 26.  "An ALJ may discount a claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment."  *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (citing *Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996)).  Second, the ALJ discussed Lewis-Smith's activities of daily living, explaining that although she claimed she was unable to do any housework, her own functional report contains evidence that she bathes herself, makes the bed, washes dishes, prepares simple meals, leaves the house three times a week and shops for food and household supplies and can walk 2-3 blocks.  AR 25, 292-96.  Activities of this nature are not consistent with claims of disabling pain. *Reed v. Barnhart*, 399 F.3d 917,

923 (8th Cir. 2005); *Medhoug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain.").

### b.    The New Evidence

After filing her request for review, Lewis-Smith submitted additional medical evidence to the Appeals Council.  AR 2.  The Appeals Council stated:

> We also looked at records dated May 21, 2014 to May 24, 2014 from Buena Vista Regional Medical Center, and from Palins Area Mental Health dated July 3, 2013 to March 5, 2014.  The Administrative Law Judge decided your case through January 31, 2013.  This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled beginning on or before January 31, 2013.

AR 2.  Lewis-Smith argues that the new records illustrate "apparent multiple sclerosis" but does not assert that they demonstrate an actual diagnosis of that disease.  Doc. No. 13 at 3.  In response, the Commissioner argues that although the records indicate a possibility that Lewis-Smith may suffer from MS, absent evidence of a retrospective diagnosis indicating that the disease was present during the relevant time period, the new information is not relevant.  Doc. No. 12 at 12 (citing *Taylor v. Apfel*, 1 Fed. Appx. 562, 563 (8th Cir. 2001) (unpublished)).[3]

### c.    Analysis

Because the Appeals Council did not consider the additional evidence Lewis-Smith submitted, I must determine whether it is new and material.  20 C.F.R. §§ 404.970(b), 416.1470(b); *Bergmann*, 207 F.3d at 1069.  New evidence cannot be merely cumulative

---

[3] As per Eighth Circuit Rule 32.1A, *Taylor* is not controlling.  However, it may be cited "if the opinion has persuasive value on a material issue and no published opinion of [the Eighth Circuit] or another court would serve as well."  8th Cir. R. 32.1A.

but, instead, must be relevant to the Commissioner's decision and "there must be a reasonable likelihood that it would have changed the [Commissioner's] determination." *Whitman v. Colvin*, 762 F.3d 701, 708 (8th Cir. 2015) (quoting *Krogmeier v. Barnhart*, 294 F.3d 1019, 1025 (8th Cir. 2002)).

The new evidence includes an MRI interpreted by Ingrid E. Franze, M.D. AR 769. On May 21, 2014, Dr. Franze concluded that "there were multiple foci signs of abnormality in the periventricular white matter of both cerebral hemispheres as outlined above most consistent with a demyelination process such as multiple sclerosis. Such a diagnosis needs confirmation with clinical correlation and other laboratory findings." *Id.* Although the records indicate test results that are consistent with a possible MS diagnosis, the records are not material to the Appeals Council's decision. In *Taylor*, the Eighth Circuit stated:

> The record shows Taylor manifested symptoms of MS well before the expiration of his insured status. However, we agree with the Commissioner that the conclusions expressed by Taylor's treating physician—who diagnosed MS shortly after Taylor first sought treatment for MS-related symptoms on August 1, 1995, and who opined that Taylor was permanently disabled at that time—coupled with the anecdotal testimony of Taylor's brother, did not amount to a retrospective diagnosis with corroborating lay testimony suggesting Taylor's symptoms were disabling prior to August 1995.

1 Fed. Appx. at 563 (unpublished). Here, the record contains no evidence that a physician has actually diagnosed Lewis-Smith with MS. Nor does the record contain evidence of a retroactive finding that Lewis-Smith suffered from MS during the relevant time period. Finally, even if new evidence suggests that she did suffer from MS during the relevant period, that disease is not a per se disabling condition that precludes substantial gainful activity. *See Kemnitz v. Astrue*, 388 Fed. Appx. 573, 574 (8th Cir. 2010).

Nonetheless, Lewis-Smith contends that this court's decision in *Woolridge v. Astrue*, No. 12-CV-4011, 2013 WL 98626 (N.D. Iowa 2013), compels remand for a finding of disability. However, the record in *Woolridge* included a retrospective medical opinion. *Id.* at *4-5. This distinction is significant. *See, e.g.*, *Pyland v. Apfel*, 149 F.3d 873, 878 (8th Cir. 1998) ("[E]vidence outside the relevant time period cannot serve as the only support for the disability claim. Such a holding would be contrary to the Social Security Act . . . which requires proof of disability during the time for which it is claimed."). Because Lewis-Smith's new evidence does not indicate that she suffered from MS during the relevant time period, it is not material to her current disability claim

Lewis-Smith also relies on *Minor v. Astrue*, 574 F.3d 625 (8th Cir. 2009). In that case, the record at the time of the ALJ's hearing indicated that the claimant suffered from interstitial lung disease. *Id.* at 628. Later, while her appeal to the Eighth Circuit was pending, the claimant was diagnosed with lung cancer and died of that disease. *Id.* at 627-28. Under those facts, the court stated:

> Although the ALJ recognized that Minor suffered from interstitial lung disease, the ALJ found her complaints only partially credible and denied her disability claims. Specifically, the ALJ noted that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible."
>
> This determination requires further review. <u>We now know that Minor suffered from lung cancer, which caused her death</u>. This knowledge and the record as a whole require a remand for further consideration of Minor's disability claim.
>
> On remand, the ALJ shall determine whether the lung cancer existed at the time that the ALJ discounted Minor's relevant complaints and, if so, whether it prevented her from engaging in any substantial gainful activity. The record may be reopened for this purpose.

*Id.* at 628 (emphasis added). Thus, at the time the court decided remand was required, it knew that the claimant had been diagnosed with lung cancer and that the disease had

caused her death. Again, by contrast, there is no evidence in this record that Lewis-Smith has been diagnosed with MS.

In short, I agree with the Commissioner that Lewis-Smith's new evidence was not material to the Commissioner's decision, as it did not address the relevant time period. As such, the Appeals Council did not err in refusing to consider that evidence. While Lewis-Smith's arguments concerning the ALJ's credibility determination are based entirely on the new evidence, *see* Doc. No. 13 at 14-18, I have nonetheless considered whether that determination is supported by substantial evidence. It is. The ALJ's stated reasons, which I set forth above, are valid reasons and are supported by the evidence of record. Moreover, the ALJ did not reject all of Lewis-Smith's subjective complaints concerning concentration, memory or physical limitations. The ALJ formulated an RFC that includes limitations in understanding, carrying out and remembering simple tasks, standing and sitting for certain periods of time, limited interaction with supervisors, coworkers, and the public, lifting limitations and hand manipulation. AR 23; *see also* AR 83-84 (hypothetical question to the VE). I find that the ALJ appropriately assessed Lewis-Smith's credibility.

## B.     *The RFC Determination*

Lewis-Smith contends that the ALJ's RFC determination was not based upon substantial evidence because no treating or examining source offered opinions as to her work-related limitations. The Commissioner disagrees.

### 1.     *Applicable Standards*

The claimant's RFC is "what [the claimant] can still do" despite his or her physical or mental "limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own

description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

An ALJ has an independent duty to fully and fairly develop the record. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (noting that the non-adversarial nature of administrative hearings make it incumbent upon the ALJ to fully and fairly develop the record.). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted). The ALJ must be able to rely on some medical evidence that describes the claimant's "functional limitations with sufficient generalized clarity to allow for understanding of how those limitations function in a work environment." *Cox*, 495 F.3d at 620 n.6. If the medical evidence on the record is sufficient to make a disability determination, the ALJ need not order additional medical

examinations to develop the record further. *See Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

Although the RFC assessment is based on medical evidence, it is ultimately an administrative decision reserved to the Commissioner. *See Cox*, 495 F.3d at 619-20 (8th Cir. 2007). Thus, "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Agan v. Astrue*, 922 F. Supp. 2d 730, 755 (N.D. Iowa 2013) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)); *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."). The ALJ does not have to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

At Step Five, the Commissioner has the burden of showing there is other work that the claimant can do, given the claimant's RFC, age, education and work experience. *Bladow*, 205 F.3d at 358-59 n.5. In *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), an ALJ made a Step Five determination that a claimant who could not perform past relevant work could, nonetheless, perform various jobs identified by a VE. *Id*. at 857. Various non-treating and non-examining physicians had reviewed the claimant's records and provided opinions about the claimant's RFC, which the ALJ then used in formulating hypothetical questions to a VE. *Id*. at 858. The Eighth Circuit began its analysis as follows:

> In our circuit it is well settled law that once a claimant demonstrates that he or she is unable to do past relevant work, the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do. *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir. 1982)(en banc); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983). It is also well

settled law that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

*Id.* at 857. The court noted that while the record contained many treatment notes, none of the treating physicians provided opinions concerning the claimant's RFC. *Id.* at 858. The court then stated:

> In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id.* In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity. As this Court said in *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975): "An administrative law judge may not draw upon his own inferences from medical reports. *See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir.1974); *Willem v. Richardson*, 490 F.2d 1247, 1248– 49 n. 3 (8th Cir.1974)."

*Id.* (emphasis in original). As I explained in a prior case:

> *Nevland* holds that the Commissioner "ordinarily" cannot meet this burden without an opinion from at least one doctor who actually examined the claimant. *Id.* at 858. Of course, "ordinarily" does not mean "never." Judge Bennett recently noted that *Nevland* "does not compel remand in every case in which the administrative record lacks a treating doctor's opinion." *Hattig v. Colvin*, No. C 12–4092 MWB, 2013 WL 6511866, at *10 (N.D. Iowa Dec. 12, 2013). Thus, if other medical evidence in the record clearly establishes a claimant's RFC to do other work, and to function in the workplace, the absence of an opinion from examining

physicians may not require remand.  Id. at *11 (citing *Nevland*, 204 F.3d at 858).

*Kruger v. Colvin*, No. C13–3036–MWB, 2014 WL 1584411, at *10 (N.D. Iowa Apr. 21, 2014).

### 2.      The ALJ's Findings

The ALJ found that Lewis-Smith had the RFC to perform light work with the following limitations:

> She can occasionally lift/carry up to 20 pounds; frequently lift/carry up to 10-pounds; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; frequently (but not constantly) handle, finger and feel; occasionally climb stairs or ramps; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel or crouch; never crawl; and must avoid all exposure to unprotected heights. Mentally, the claimant is able to understand, remember, and carry out simple tasks; and she can tolerate occasional interaction with supervisors, coworkers and the public.

AR 23.  The ALJ gave great weight to the state agency consultants' opinions, concluding that they were consistent with other substantive evidence in the record as a whole.  AR 28, 31.  The ALJ found that Lewis-Smith had a limited history of medical treatment, and unremarkable examination findings.  AR 28.

### 3.      Summary of the Medical Evidence

The record contains evidence from numerous sources, including (a) Sharon Arndt-Nelson, ARNP, (b) Kevin M. Schumacher, Ph.D., (c) Carroll Roland, Ph.D. and (d) Phil Deffer, M.D.  The record also contains emergency room treatment notes, Lewis-Smith's testimony and her physical functional report.

**Nurse Arndt-Nelson**.  Nurse Arndt-Nelson provided treatment at the Plains Area Mental Health Center beginning January 4, 2012.  AR 654.  Ms. Arndt-Nelson found

during multiple visits that Lewis-Smith was not in acute distress. AR 676, 737. In addition, Nurse Arndt-Nelson opined that Lewis-Smith did not exhibit habit deterioration, had a stable gait, her thought process was logical and goal-directed, she did not have any loose association or any abnormal or psychotic thought process, had impaired judgment and insight, there were no problems with her recent and remote memory, her attention span and concentration were intact and her fund of knowledge regarding current events was intact. AR 655, 737. Lewis-Smith was able to articulate thoughts and feelings effectively. AR 678. On January 8, 2012, Nurse Arndt-Nelson assigned a Global Assessment Functioning (GAF) score of 45.[4] AR 683.

**Dr. Schumacher**. Dr. Schumacher testified as a medical expert with regard to Lewis-Smith's mental limitations. He reviewed Lewis-Smith's records but did not examine her. AR 60, 66. He opined that she had constant limitations in the ability to carry out simple instructions. AR 64. He also opined that although there was no objective evidence of memory limitations in the record, Lewis-Smith has moderate limitations in maintaining concentration, persistence and pace, mild limitations in social functioning and no episodes of decompensation. AR 61. He noted Lewis-Smith's diagnosis of generalized anxiety disorder and indicated that it would cause mild difficulties with social functioning. AR 61-62. Dr. Schumacher also opined that Lewis-Smith had constant problems with her ability to (a) interact with supervisors, co-workers and the general public and (b) respond appropriately to usual work situations and changes in a routine work setting. AR 64-65.

---

[4] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM–IV). A GAF score of 41 to 50 indicates the individual has serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational or school functioning (*e.g.*, no friends, unable to keep a job). *Id.*

**Dr. Roland**. On October 7, 2011, Dr. Roland conducted a consultative psychological evaluation. AR 633. Based on that examination, he opined that Lewis-Smith's memory was intact for recent and remote events, that she had normal attention and concentration, goal directed thought process, intact formal judgment, an understanding of basic societal mores and an ability to intellectually function at entry level full time competitive employment. AR 637-38. Dr. Roland assigned a GAF score of 50. AR 638.

**Dr. Deffer**. Dr. Deffer performed a right carpal tunnel release on January 26, 2012, and a left carpal tunnel release on March 22, 2012. AR 705, 707. Following both surgeries, Dr. Deffer opined that Lewis-Smith was doing functionally well. AR 704, 706.

**Emergency room visits.** On June 9, 2011, Lewis-Smith stated she had pain and tingling in her hands, arm, jaw and ears and that the pain woke her up at night. AR 585, 586. Her chief complaint was severe hypertension and a headache. AR 593. During the examination it was noted that her extremities and neurological exam were both within normal limitations. AR 591. She had no sensory or motor deficits, her mental status was within normal limitations and she had no loss of coordination. AR 595.

On July 5, 2011, a physician noted that Lewis-Smith was oriented to time, place, date, person, was alert, denied headaches and was able to move all extremities. AR 381. She was found to have normal mental function and no dizziness or headaches. AR 384. The primary reason for the visit on that date was arm pain and tingling. AR 381.

### 4. *Analysis*

Relying on *Nevland*, Lewis-Smith argues that remand is necessary because the ALJ's findings as to her RFC were not based on the opinions of any treating or examining source. Doc. No. 11 at 21-23. Of course, this argument is simply wrong with regard to Lewis-Smith's mental RFC findings, as the ALJ arranged a consultative psychological

examination by Dr. Roland.[5]  As for her physical RFC, there is no dispute that the record lacks opinion evidence from any treating or examining source as to the limitations and restrictions that result from Lewis-Smith's physical impairments.  Thus, the question is whether there was sufficient medical evidence in the record for the ALJ to determine Lewis-Smith's ability to function in the workplace.

The Commissioner argues that because Lewis-Smith's physical impairments were not complex, there was no need for the ALJ to obtain treating or examining source opinions as to their limiting effects.  Doc. No. 12 at 18-19.  I agree.  Lewis-Smith's physical impairments included bilateral carpal tunnel syndrome and right knee replacement.  Regarding carpal tunnel syndrome, the ALJ noted that Lewis-Smith first described problems with her hands in late 2011, underwent carpal tunnel release in early 2012 and subsequently sought little treatment.  AR 27, 387, 699.  Physicians noted she had hand pain on occasion but that she had no serious problems existed with her hand or fingers, had extension within normal limits and was doing well functionally.  AR 368, 381, 385, 649, 699, 706.  As for her knee, the ALJ correctly noted that Lewis-Smith sought little treatment and reported no significant problems to any provider during the relevant period.  AR 27.  Additionally, she was noted to have full range of motion in her joints and 5/5 strength in each of her extremities.  AR 637, 716.

Moreover, the record contains opinions of state agency medical consultants who reviewed Lewis-Smith's records and concluded that she could perform a reduced range of light work consistent with the ALJ's RFC determination.  AR 95-100, 110-15, 126-32, 143-49.  The ALJ considered these opinions and found that they were entitled to great

_____

[5] Lewis-Smith suggests in passing that Dr. Roland's findings are "suspect" because he did not review medical records in the course of conducting his examination.  Doc. No. 11 at 22.  However, Lewis-Smith does not develop this argument by citing authorities or explaining how any particular medical records might have affected Dr. Roland's findings.  Having carefully reviewed the record, I find that Dr. Roland's detailed report, which was based on an examination and objective testing, easily satisfies the *Nevland* standard.

weight, as they were consistent with the record as a whole. AR 28. By contrast, the record contains no evidence that any physician, during the relevant period, noted physical restrictions or limitations beyond those set forth in the ALJ's RFC.

For these reasons, and despite the lack of opinion evidence from any treating or examining source, I find that the ALJ's assessment of Lewis-Smith's physical RFC was properly based on "some medical evidence." I further find that the ALJ's determination of Lewis-Smith's RFC is supported by substantial evidence on the record as a whole.

## VI.    CONCLUSION

After review of the entire record, and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Lewis-Smith was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **affirmed**. Judgment shall enter in favor of the Commissioner and against Lewis-Smith.

**IT IS SO ORDERED.**

**DATED** this 28th day of March, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE